# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| Gregory Hough,<br><br>          Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc.,<br>Equifax Information Services LLC,<br>TransUnion LLC, Northpark Community<br>Credit Union, and Regions Bank,<br><br>          Defendants. | Civil Action No: 1:23-CV-00446<br><br><br>**COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

### INTRODUCTION

1.    The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

2.    Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

3.    Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

4.      The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

5.      The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

6.      The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.

7.      Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

8.      Gregory Hough ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax"), TransUnion LLC ("TU"), Northpark Community Credit Union ("Northpark"), and Regions Bank ("Regions") (jointly as "Defendants"), regarding erroneous reports of derogatory credit information and Defendants' failure to maintain maximum possible accuracy as to Plaintiff's credit reports.

9.      While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

10.     Unless otherwise stated, all the conduct engaged in by Defendants took place in Indiana.

11.     Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

12.    Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

13.    Jurisdiction of this Court arises under 28 U.S.C. § 1311 and pursuant to 15 U.S.C. § 1681 *et seq*.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendants transact business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

15.    Plaintiff resides in this District.

## PARTIES

16.    Plaintiff is an adult individual and are each a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

17.    Defendant Experian is a business entity doing business in the Southern District of Indiana.

18.    Defendant Experian's registered agent address is: C T Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204.

19.    Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

20.    Defendant Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

21.    Defendant Equifax is a business entity doing business in the Southern District of Indiana.

22.    Defendant Equifax's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

23.    Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

24.    Defendant Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

25.    Defendant TU is a business entity doing business in the Southern District of Indiana.

26.    Defendant TU's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

27.    Defendant TU regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

28.    Defendant TU is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

29.    Defendant Northpark is a business entity doing business in the Southern District of Indiana.

30.    Defendant Northpark's corporate office address is: 5965 West Technology Center Dr., Indianapolis, IN 46278.

31.    Defendant Northpark is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

32.     Defendant Regions is a business entity doing business in the Southern District of Indiana.

33.     Defendant Regions's registered agent address is: Corporation Service Company, 135 North Pennsylvania St., Suite 1610, Indianapolis, IN 46204.

34.     Defendant Regions is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

35.     Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

36.     Plaintiff is informed and believe and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

37.     Plaintiff is informed and believe and, on that basis, alleges that at all times mentioned herein each Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each respective Defendant is liable to Plaintiff for the relief prayed for herein.

## FACTUAL ALLEGATIONS

38.     Sometime on or before October 2015, Plaintiff purchased a home that was financed with a mortgage (the "Mortgage").

39.     The Mortgage was serviced by Regions (the "Regions Account").

40.     Sometime on or before November 2016, Plaintiff purchased a vehicle that was secured by an auto loan held by Northpark (the "Northpark Account")

41. On or about July 18, 2018, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana. Plaintiff's case was assigned Case Number 18-5455-JMC-13 (the "Bankruptcy").

42. On or about November 14, 2018, Plaintiff filed an Amended Chapter 13 Plan.

43. The Regions Account and the Northpark Account were identified in Plaintiff's Chapter 13 Plan as accounts to be paid through the Trustee conduit.

44. The Chapter 13 Plan provided a nonstandard provision that stated:

> For all creditors receiving payments through the Trustee conduit (Trustee Pay), the following plan provision shall apply: This Chapter 13 Plan along with the Confirmation Order is a modification of the original contracted payment terms with the Debtor(s) as set forth herein and allowed under bankruptcy law. The payment due days, application of payments, assessment of late fees and attorney fees, and balances owed are hereby controlled by the terms described in this Chapter 13 Plan. See (*In re Diana Lynn Harvey*, 213 F.3d 318 7th Cir. 2000). This modified contract, created by the confirmed Chapter 13 Plan and Confirmation Order, shall only be subject to modification of the Chapter 13 Plan under 11 U.S.C. § 1329. This section is not applicable to direct pay secured creditors not paid through the Trustee conduit.

45. The nonstandard provision in the confirmed Chapter 13 Plan creates an obligation for creditors who choose to credit report to do so in conformity with the modified contract created by the Chapter 13 Plan.

46. This means that creditors who credit report must report the balance of the account within the Bankruptcy, along with the recent payment, payments made, and the current status of those payments.

47. Regions and Northpark received notice of the Chapter 13 Plan.

48. On or about January 18, 2019, Plaintiff's Chapter 13 Plan was confirmed.

49. Plaintiff has faithfully made monthly payments to the Trustee, as required by the terms of Plaintiff's confirmed Chapter 13 Plan.

50. Despite the confirmed Chapter 13 Plan, Regions Account was reported by Regions, Experian, TU, and Equifax without a balance or payment information on Plaintiff's respective Experian, TU, and Equifax credit reports.

51. As a result, Regions, Experian, TU, and Equifax reported the Regions Account on Plaintiff's credit reports in an inaccurate, incomplete, and/or materially misleading way.

52. Despite the Chapter 13 Plan, Northpark Account was reported by Northpark, Experian, TU, and Equifax without a balance or payment information on Plaintiff's respective Experian, TU, and Equifax credit reports.

53. As a result, Northpark, Experian, TU, and Equifax reported the Northpark Account on Plaintiff's credit reports in an inaccurate, incomplete, and/or materially misleading way.

54. Plaintiff's creditors and potential creditors have accessed Plaintiff's credit reports while the misreporting described herein was on Plaintiff's credit reports and were misinformed by Defendants about Plaintiff's credit worthiness.

### *Northpark and Experian's Inaccurate Reporting of the Northpark Account*

55. Sometime before April 14, 2021, Northpark and Experian were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the Northpark Account.

56. The Northpark Account was reported on the Experian report with no balance, no amount paid, and no payment history.

57. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Northpark Account, Northpark and Experian were incorrectly making it appear as if the Northpark Account did not have a balance or a positive payment status.

58. Instead, the Northpark Account reported as though it was closed.

59.     It is inaccurate, incomplete, and/or materially misleading for Northpark and Experian to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

60.     However, Northpark and Experian either reported or caused to be reported inaccurate information as discussed herein.

### *Northpark and Equifax's Inaccurate Reporting of the Northpark Account*

61.     Sometime before April 14, 2021, Northpark and Equifax were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the Northpark Account.

62.     The Northpark Account was reported on the Equifax report with no balance, no amount paid, and no payment history.

63.     By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Northpark Account, Northpark and Equifax were incorrectly making it appear as if the Northpark Account did not have a balance or a positive payment status.

64.     Instead, the Northpark Account reported as though it was closed.

65.     It is inaccurate, incomplete, and/or materially misleading for Northpark and Equifax to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

66.     However, Northpark and Equifax either reported or caused to be reported inaccurate information as discussed herein.

### *Northpark and TU's Inaccurate Reporting of the Northpark Account*

67.     Sometime before April 14, 2021, Northpark and TU were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the Northpark Account.

68.    The Northpark Account was reported on the TU report with no balance, no amount paid, and no payment history.

69.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Northpark Account, Northpark and TU were incorrectly making it appear as if the Northpark Account did not have a balance or a positive payment status.

70.    Instead, the Northpark Account reported as though it was closed.

71.    It is inaccurate, incomplete, and/or materially misleading for Northpark and TU to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

72.    However, Northpark and TU either reported or caused to be reported inaccurate information as discussed herein.

### *Regions and TU's Inaccurate Reporting of the Regions Account*

73.    Sometime before April 14, 2021, Regions and TU were also reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the Regions Account.

74.    The Regions Account was reported on the TU report with no balance, no amount paid, and no payment history.

75.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Regions Account, Regions and TU were incorrectly making it appear as if the Regions Account did not have a balance or a positive payment status.

76.    Instead, the Regions Account reported as though it was closed.

77.    It is inaccurate, incomplete, and/or materially misleading for Regions and TU to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

78. However, Regions and TU either reported or caused to be reported inaccurate information as discussed herein.

### *Plaintiff's First Experian Dispute*

79. On or after April 14, 2021, Plaintiff sent a letter to Experian to dispute Northpark and Experian's reporting of the Northpark Account on Plaintiff's Experian credit report pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "First Experian Dispute").

80. Specifically, Plaintiff explained in the First Experian Dispute that the Northpark Account was being paid through Plaintiff's Chapter 13 Plan.

81. Plaintiff requested that Northpark and Experian list the current balance and the ongoing payments Plaintiff was making on the Northpark Account, in compliance with Plaintiff's Chapter 13 Plan.

82. Plaintiff attached supporting documents to the First Experian Dispute, including the Chapter 13 Plan and confirmation order.

83. Experian received Plaintiff's First Experian Dispute.

84. Upon receipt of the First Experian Dispute, Experian was required to conduct a reinvestigation into the Northpark Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

85. Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify Northpark of Plaintiff's First Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's First Experian Dispute for Northpark to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

86. Pursuant to 15 U.S.C. § 1681s-2(b), Northpark had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

87. A reasonable reinvestigation and/or investigation by Experian and Northpark respectively would have indicated that they were reporting the Northpark Account inaccurately, incompletely, and/or in a materially misleading way.

88. However, after receipt of the First Experian Dispute, Experian and Northpark continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Experian credit report.

*Plaintiff's First Equifax Dispute*

89. On or after April 14, 2021, Plaintiff sent a letter to Equifax to dispute Northpark and Equifax's reporting of the Northpark Account on Plaintiff's Equifax credit report pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "First Equifax Dispute").

90. Specifically, Plaintiff explained in the First Equifax Dispute that the Northpark Account was being paid through Plaintiff's Chapter 13 Plan.

91. Plaintiff requested that Northpark and Equifax list the current balance and the ongoing payments Plaintiff was making on the Northpark Account, in compliance with Plaintiff's Chapter 13 Plan.

92. Plaintiff attached supporting documents to the First Equifax Dispute, including the Chapter 13 Plan and confirmation order.

93. Equifax received Plaintiff's First Equifax Dispute.

94. Upon receipt of the First Equifax Dispute, Equifax was required to conduct a reinvestigation into the Northpark Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

95.     Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Northpark of Plaintiff's First Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's First Equifax Dispute for Northpark to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

96.     Pursuant to 15 U.S.C. § 1681s-2(b), Northpark had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

97.     A reasonable reinvestigation and/or investigation by Equifax and Northpark respectively would have indicated that they were reporting the Northpark Account inaccurately, incompletely, and/or in a materially misleading way.

98.     However, after receipt of the First Equifax Dispute, Equifax and Northpark continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Equifax credit report.

### *Plaintiff's First TU Dispute*

99.     On or after April 14, 2021, Plaintiff sent a letter to TU to dispute Northpark and TU's reporting of the Northpark Account on Plaintiff's TU credit report pursuant to 15 U.S.C. § 1681i by notifying TU, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "First TU Dispute").

100.    In the First TU Dispute, Plaintiff also disputed Regions and TU's reporting of the Regions Account.

101.    Specifically, Plaintiff explained in the First TU Dispute that the Northpark Account was being paid through Plaintiff's Chapter 13 Plan.

102.    Plaintiff also explained that the Regions Account was being paid through the Chapter 13 Plan.

103. Plaintiff requested that Northpark and TU list the current balance and the ongoing payments Plaintiff was making on the Northpark Account, in compliance with Plaintiff's Chapter 13 Plan.

104. Plaintiff also requested that Regions and TU list the current balance and the ongoing payments Plaintiff was making on the Regions Account, in compliance with Plaintiff's Chapter 13 Plan.

105. Plaintiff attached supporting documents to the First TU Dispute, including the Chapter 13 Plan and confirmation order.

106. TU received Plaintiff's First TU Dispute.

107. Upon receipt of the First TU Dispute, TU was required to conduct a reinvestigation into the Northpark Account and Regions Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

108. Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify Northpark of Plaintiff's First TU Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's First TU Dispute for Northpark to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

109. Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify Regions of Plaintiff's First TU Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's First TU Dispute for Regions to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

110. Pursuant to 15 U.S.C. § 1681s-2(b), Northpark had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

111.    Pursuant to 15 U.S.C. § 1681s-2(b), Regions had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

112.    A reasonable reinvestigation and/or investigation by TU and Northpark respectively would have indicated that they were reporting the Northpark Account inaccurately, incompletely, and/or in a materially misleading way.

113.    A reasonable reinvestigation and/or investigation by TU and Regions respectively would have indicated that they were reporting the Regions Account inaccurately, incompletely, and/or in a materially misleading way.

114.    However, after receipt of the First TU Dispute, TU and Northpark continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's TU credit report.

115.    After receipt of the First TU Dispute, TU and Regions continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's TU credit report as well.

***Northpark and Experian's Continued Inaccurate Reporting after the First Experian Dispute***

116.    Following Northpark and Experian's respective investigations into the First Experian Dispute, on or after May 22, 2021, Plaintiff received dispute results from Experian (the "First Experian Dispute Results").

117.    Experian and Northpark failed to correct the inaccurate, incomplete, and/or materially misleading information on the Northpark Account on the First Experian Dispute Results.

118.    Instead, on the First Experian Dispute Results, Northpark and Experian continued to report the Northpark Account in an inaccurate, incomplete, and/or materially misleading way.

119.    Northpark and Experian continued to report the Northpark Account on the First Experian Dispute Results with no balance or monthly payment amount, and no payment history past October 2016.

120.    Northpark and Experian's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Northpark Account was negative, with no balance or monthly payments being made, and that Plaintiff had not made any payments since October 2016.

121.    What should have been a positive account with positive payment information was instead reporting as a negative account.

122.    Northpark and Experian's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the Northpark Account were problematic because Plaintiff's dispute included relevant supporting documents, which Northpark and Experian chose to ignore.

### *Northpark and Equifax's Continued Inaccurate Reporting after the First Equifax Dispute*

123.    Following Northpark and Equifax's respective investigations into the First Equifax Dispute, on or after May 3, 2021, Plaintiff received dispute results from Equifax (the "First Equifax Dispute Results").

124.    In the First Equifax Dispute Results, Equifax claimed that the Northpark Account was not reporting on Plaintiff's Equifax report.

125.    Upon information and belief, this was unlikely, as the Northpark Account was reporting on Plaintiff's Experian and TU credit reports at the time of the First Equifax Dispute Results, and the Northpark Account was reported on a later Equifax credit report.

***Northpark, Regions, and TU's Continued Inaccurate Reporting after the First TU Dispute***

126.    On or after April 26, 2021, Plaintiff received a TU credit report dated April 26, 2021 (the "4/26/21 TU Report").

127.    TU and Northpark failed to correct the inaccurate, incomplete, and/or materially misleading information on the Northpark Account on the 4/26/21 TU Report.

128.    Instead, on the 4/26/21 TU Report, Northpark and TU continued to report the Northpark Account in an inaccurate, incomplete, and/or materially misleading way.

129.    Northpark and TU reported the Northpark Account on the 4/26/21 TU Report with a $0 balance, $0 monthly payment amount, and no payment history past October 2016.

130.    Northpark and TU's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Northpark Account was negative, with a $0 balance, $0 in monthly payments being made, and that Plaintiff had not made any payments since October 2016.

131.    What should have been a positive account with positive payment information was instead reporting as a negative account.

132.    Northpark and TU's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the Northpark Account were problematic because Plaintiff's dispute included relevant supporting documents, which Northpark and TU chose to ignore.

133.    Additionally, Regions and TU continued to report the Regions Account in an inaccurate, incomplete, and/or materially misleading way.

134.    Regions and TU reported the Regions Account on the 4/26/21 TU Report with a $0 balance and no monthly payment amount.

135. Regions's and TU's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Regions Account was negative, with a $0 balance and no monthly payments being made.

136. What should have been a positive account with positive payment information was instead reporting as a negative account.

137. Regions and TU's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the Regions Account were also problematic because Plaintiff's dispute included relevant supporting documents, which Regions and TU chose to ignore.

### *Plaintiff's Second Experian Dispute*

138. On or after August 30, 2022, Plaintiff sent a letter to Experian to again dispute Northpark and Experian's reporting of the Northpark Account on Plaintiff's Experian credit report pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "Second Experian Dispute").

139. In the Second Experian Dispute, Plaintiff also disputed Regions and Experian's reporting of the Regions Account.

140. Specifically, Plaintiff explained in the Second Experian Dispute that the Northpark Account was being paid through Plaintiff's Chapter 13 Plan.

141. Plaintiff also explained that the Regions Account was being paid through the Chapter 13 Plan.

142. Plaintiff requested that Northpark and Experian list the current balance and the ongoing payments Plaintiff was making on the Northpark Account, in compliance with Plaintiff's Chapter 13 Plan.

143.    Plaintiff also requested that Regions and Experian list the current balance and the ongoing payments Plaintiff was making on the Regions Account, in compliance with Plaintiff's Chapter 13 Plan.

144.    Plaintiff attached supporting documents to the Second Experian Dispute, including the Chapter 13 Plan and confirmation order.

145.    Experian received Plaintiff's Second Experian Dispute.

146.    Upon receipt of the Second Experian Dispute, Experian was required to conduct a reinvestigation into the Northpark Account and Regions Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

147.    Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify Northpark of Plaintiff's Second Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Second Experian Dispute for Northpark to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

148.    Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify Regions of Plaintiff's Second Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Second Experian Dispute for Regions to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

149.    Pursuant to 15 U.S.C. § 1681s-2(b), Northpark had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

150.    Pursuant to 15 U.S.C. § 1681s-2(b), Regions had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

151.    A reasonable reinvestigation and/or investigation by Experian and Northpark respectively would have indicated that they were reporting the Northpark Account inaccurately, incompletely, and/or in a materially misleading way.

152.    A reasonable reinvestigation and/or investigation by Experian and Regions respectively would have indicated that they were reporting the Regions Account inaccurately, incompletely, and/or in a materially misleading way.

153.    However, after receipt of the Second Experian Dispute, Experian and Northpark continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Experian credit report.

154.    After receipt of the Second Experian Dispute, Experian and Regions continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Experian credit report as well.

### *Plaintiff's Second Equifax Dispute*

155.    On or after August 30, 2022, Plaintiff sent a letter to Equifax to again dispute Northpark and Equifax's reporting of the Northpark Account on Plaintiff's Equifax credit report pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "Second Equifax Dispute").

156.    In the Second Equifax Dispute, Plaintiff also disputed Regions and Equifax's reporting of the Regions Account.

157.    Specifically, Plaintiff explained in the Second Equifax Dispute that the Northpark Account was being paid through Plaintiff's Chapter 13 Plan.

158.    Plaintiff also explained that the Regions Account was being paid through the Chapter 13 Plan.

159. Plaintiff requested that Northpark and Equifax list the current balance and the ongoing payments Plaintiff was making on the Northpark Account, in compliance with Plaintiff's Chapter 13 Plan.

160. Plaintiff also requested that Regions and Equifax list the current balance and the ongoing payments Plaintiff was making on the Regions Account, in compliance with Plaintiff's Chapter 13 Plan.

161. Plaintiff attached supporting documents to the Second Equifax Dispute, including the Chapter 13 Plan and confirmation order.

162. Equifax received Plaintiff's Second Equifax Dispute.

163. Upon receipt of the Second Equifax Dispute, Equifax was required to conduct a reinvestigation into the Northpark Account and Regions Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

164. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Northpark of Plaintiff's Second Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Second Equifax Dispute for Northpark to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

165. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Regions of Plaintiff's Second Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Second Equifax Dispute for Regions to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

166.    Pursuant to 15 U.S.C. § 1681s-2(b), Northpark had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

167.    Pursuant to 15 U.S.C. § 1681s-2(b), Regions had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

168.    A reasonable reinvestigation and/or investigation by Equifax and Northpark respectively would have indicated that they were reporting the Northpark Account inaccurately, incompletely, and/or in a materially misleading way.

169.    A reasonable reinvestigation and/or investigation by Equifax and Regions respectively would have indicated that they were reporting the Regions Account inaccurately, incompletely, and/or in a materially misleading way.

170.    However, after receipt of the Second Equifax Dispute, Equifax and Northpark continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Equifax credit report.

171.    After receipt of the Second Equifax Dispute, Equifax and Regions continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Equifax credit report as well.

### *Plaintiff's Second TU Dispute*

172.    On or after August 30, 2022, Plaintiff sent a letter to TU to again dispute Northpark and TU's reporting of the Northpark Account on Plaintiff's TU credit report pursuant to 15 U.S.C. § 1681i by notifying TU, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "Second TU Dispute").

173.    In the Second TU Dispute, Plaintiff disputed Regions and TU's reporting of the Regions Account a second time as well.

174.    Specifically, Plaintiff explained in the Second TU Dispute that the Northpark Account was being paid through Plaintiff's Chapter 13 Plan.

175.    Plaintiff also explained that the Regions Account was being paid through the Chapter 13 Plan.

176.    Plaintiff requested that Northpark and TU list the current balance and the ongoing payments Plaintiff was making on the Northpark Account, in compliance with Plaintiff's Chapter 13 Plan.

177.    Plaintiff also requested that Regions and TU list the current balance and the ongoing payments Plaintiff was making on the Regions Account, in compliance with Plaintiff's Chapter 13 Plan.

178.    Plaintiff attached supporting documents to the Second TU Dispute, including the Chapter 13 Plan and confirmation order.

179.    TU received Plaintiff's Second TU Dispute.

180.    Upon receipt of the Second TU Dispute, TU was required to conduct a reinvestigation into the Northpark Account and Regions Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

181.    Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify Northpark of Plaintiff's Second TU Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Second TU Dispute for Northpark to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

182.  Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify Regions of Plaintiff's Second TU Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Second TU Dispute for Regions to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

183.  Pursuant to 15 U.S.C. § 1681s-2(b), Northpark had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

184.  Pursuant to 15 U.S.C. § 1681s-2(b), Regions had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

185.  A reasonable reinvestigation and/or investigation by TU and Northpark respectively would have indicated that they were reporting the Northpark Account inaccurately, incompletely, and/or in a materially misleading way.

186.  A reasonable reinvestigation and/or investigation by TU and Regions respectively would have indicated that they were reporting the Regions Account inaccurately, incompletely, and/or in a materially misleading way.

187.  However, after receipt of the Second TU Dispute, TU and Northpark continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's TU credit report.

188.  After receipt of the Second TU Dispute, TU and Regions continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's TU credit report as well.

### *Northpark, Regions, and Experian's Continued Inaccurate Reporting after the Second Experian Dispute*

189.    Following Northpark, Regions, and Experian's respective investigations into the Second Experian Dispute, on or after September 19, 2022, Plaintiff received dispute results from Experian (the "Second Experian Dispute Results").

190.    Experian and Northpark failed to correct the inaccurate, incomplete, and/or materially misleading information on the Northpark Account on the Second Experian Dispute Results.

191.    Instead, on the Second Experian Dispute Results, Northpark and Experian continued to report the Northpark Account in an inaccurate, incomplete, and/or materially misleading way.

192.    Northpark and Experian reported the Northpark Account on the Second Experian Dispute Results with no balance, no payment amount, and no payment history past July 2018.

193.    Northpark and Experian's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Northpark Account was negative, with no balance, no monthly payments being made, and that Plaintiff had not made any payments since July 2018.

194.    What should have been a positive account with positive payment information was instead reporting as a negative account.

195.    Northpark and Experian's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the Northpark Account were problematic because Plaintiff's dispute included relevant supporting documents, which Northpark and Experian chose to ignore.

196.    Additionally, Regions and Experian continued to report the Regions Account in an inaccurate, incomplete, and/or materially misleading way.

197. Regions and Experian reported the Regions Account on the Second Experian Dispute Results with no balance and no monthly payment amount.

198. Regions and Experian's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Regions Account was negative, with no balance and no monthly payments being made.

199. What should have been a positive account with positive payment information was instead reporting as a negative account.

200. Regions and Experian's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the Regions Account were also problematic because Plaintiff's dispute included relevant supporting documents, which Regions and Experian chose to ignore.

201. Additionally, the inaccurate, incomplete, and/or materially misleading reporting continued, as on an Experian credit report dated January 16, 2023, Experian, Northpark, and Regions continued report no balance or payment information on the respective tradelines.

202. Even after the January 16, 2023 Experian reporting, the inaccurate, incomplete, and/or materially misleading reporting persisted, as on a Experian credit reported dated March 8, 2023, Experian, Northpark, and Regions continued report no balance or payment information on the respective tradelines.

203. In fact, on the March 8, 2023 Experian report, the Northpark Account and Regions Account each inaccurately reported that the monthly payments on each respective account was $0.

*Northpark, Regions, and Equifax's Continued Inaccurate Reporting after the Second Equifax Dispute*

204. Following Northpark, Regions, and Equifax's respective investigations into the Second Equifax Dispute, on or after September 9, 2022, Plaintiff received dispute results from Equifax (the "Second Equifax Dispute Results").

205. Equifax and Northpark failed to correct the inaccurate, incomplete, and/or materially misleading information on the Northpark Account on the Second Equifax Dispute Results.

206. Instead, on the Second Equifax Dispute Results, Northpark and Equifax continued to report the Northpark Account in an inaccurate, incomplete, and/or materially misleading way.

207. Northpark and Equifax reported the Northpark Account on the Second Equifax Dispute Results with no balance, no payment amount, and no payment history past July 2018.

208. Northpark and Equifax's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Northpark Account was negative, with no balance and no monthly payments being made.

209. Additionally, the notation above the Northpark Account tradeline on the Equifax dispute included the following statement:

> ACCOUNTS INCLUDED IN BANKRUPTCY DO NOT REPORT ACCOUNT INFORMATION AND ARE CONSIDERED CLOSED; AND WILL REMAIN ON THE EQUIFAX CREDIT FILE SEVEN YEARS FROM THE DATE OF FIRST DELINQUENCY.

210. This statement is inaccurate, as the Northpark Account was not closed and Plaintiff was making payments on the account, in accord with the Chapter 13 Plan.

211. What should have been a positive account with positive payment information was instead reporting as a negative account.

212. Northpark and Equifax continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the Northpark Account were

problematic because Plaintiff's dispute included relevant supporting documents, which Northpark and Equifax chose to ignore.

213. Additionally, Regions and Equifax continued to report the Regions Account in an inaccurate, incomplete, and/or materially misleading way.

214. Regions and Equifax reported the Regions Account on the Second Equifax Dispute Results with no balance and no monthly payment amount.

215. Regions and Equifax's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Regions Account was negative, with no balance and no monthly payments being made.

216. Additionally, the notation above the Regions Account tradeline on the Equifax dispute included the following statement:

> ACCOUNTS INCLUDED IN BANKRUPTCY DO NOT REPORT ACCOUNT INFORMATION AND ARE CONSIDERED CLOSED; AND WILL REMAIN ON THE EQUIFAX CREDIT FILE SEVEN YEARS FROM THE DATE OF FIRST DELINQUENCY.

217. This statement is inaccurate, as the Regions Account was not closed and Plaintiff was making payments on the account, in accord with the Chapter 13 Plan.

218. What should have been a positive account with positive payment information was instead reporting as a negative account.

219. Regions and Equifax's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the Regions Account were also problematic because Plaintiff's dispute included relevant supporting documents, which Regions and Equifax chose to ignore.

220.    Additionally, the inaccurate, incomplete, and/or materially misleading reporting continued, as on an Equifax credit report dated March 8, 2023, Equifax, Northpark, and Regions continued to report no balance or payment information on the respective tradelines.

221.    Furthermore, the Northpark Account and Regions Account were inaccurately reported as "Closed" by Experian and the respective furnishers on the March 8, 2023 Equifax credit report.

***Northpark, Regions, and TU's Continued Inaccurate Reporting after the Second TU Dispute***

222.    Following Northpark, Regions, and TU's respective investigations into the Second TU Dispute, on or after September 19, 2022, Plaintiff received investigation results from TU (the "TU Investigation Results").

223.    TU and Northpark failed to correct the inaccurate, incomplete, and/or materially misleading information on the Northpark Account on the TU Investigation Results.

224.    Instead, on the TU Investigation Results, Northpark and TU continued to report the Northpark Account in an inaccurate, incomplete, and/or materially misleading way.

225.    Northpark and TU reported the Northpark Account on the TU Investigation Results with no balance and no payment amount.

226.    Northpark and TU's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Northpark Account was negative, with no balance and no monthly payments being made.

227.    What should have been a positive account with positive payment information was instead reporting as a negative account.

228. Northpark and TU's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the Northpark Account were problematic because Plaintiff's dispute included relevant supporting documents, which Northpark and TU chose to ignore.

229. Additionally, Regions and TU continued to report the Regions Account in an inaccurate, incomplete, and/or materially misleading way.

230. Regions and TU reported the Regions Account on the TU Investigation Results with no balance and no monthly payment amount.

231. Regions and TU's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Regions Account was negative, with no balance and no monthly payments being made.

232. What should have been a positive account with positive payment information was instead reporting as a negative account.

233. Regions and TU's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the Regions Account were also problematic because Plaintiff's dispute included relevant supporting documents, which Regions and TU chose to ignore.

234. Additionally, the inaccurate, incomplete, and/or materially misleading reporting continued, as on a TU credit report dated January 16, 2023, TU, Northpark, and Regions continued report no balance or payment information on the respective tradelines.

235.    Even after the January 16, 2023 TU reporting, the inaccurate, incomplete, and/or materially misleading reporting persisted, as on a TU credit reported dated March 9, 2023, TU, Northpark, and Regions continued report no balance or payment information on the respective tradelines.

### *The Impact of Inaccurate or Misleading Information on Consumer Reports*

236.    A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    i.    credit or insurance to be used primarily for personal, family, or household purposes;

    ii.    employment purposes; or

    iii.    any other purpose authorized under section 1681b.

237.    As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

238.    A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

239.    The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

*Credit Scoring*

240.  The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

241.  Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer from reduced FICO credit scores.

242.  The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

243.  The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

244.  FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

245.  A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

246.    Inaccurate, incomplete, and/or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

247.    Here, the inaccurate, incomplete, and/or materially misleading reporting of the Northpark Account and Regions Account adversely affects Plaintiff's FICO score as Plaintiff's credit reports make it appear as though the accounts do not have a balance and Plaintiff had not been paying on either account at all.

248.    There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; *i.e.*, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

249.    Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

### *Defendants' Violations of the FCRA and Plaintiff's Damages*

250.    It is inaccurate, incomplete, and/or materially misleading to report an account does not have a balance when it does in fact have a balance.

251.    It is inaccurate, incomplete, and/or materially misleading to report an account does not have any payments made upon it when the consumer is in fact making payments on the account.

252.    It is inaccurate, incomplete, and/or materially misleading to suppress positive and accurate account balance and payment data.

253.   It is inaccurate, incomplete, and/or materially misleading to report an account is closed when it is open and a consumer is paying on it as agreed.

254.   As evidenced by Experian's failure to report accurate information on the Northpark Account and Regions Account—despite having notice of the proper payment and balance data, along with relevant bankruptcy documents—Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

255.   Experian either ignored or failed to review all relevant information on the Northpark Account and Regions Account and thus failed to ensure maximum possible accuracy of the information concerning the individuals about whom the reports relate.

256.   As evidenced by Equifax's failure to report accurate information on the Northpark Account and Regions Account—despite having notice of the proper payment and balance data, along with relevant bankruptcy documents—Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

257.   Equifax either ignored or failed to review all relevant information on the Northpark Account and Regions Account and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

258.   As evidenced by TU's failure to report accurate information on the Northpark Account and Regions Account—despite having notice of the proper payment and balance data, along with relevant bankruptcy documents—TU failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

259.    TU either ignored or failed to review all relevant information on the Northpark Account and Regions Account and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

260.    Additionally, as evidenced by the inaccurate, incomplete, and/or materially misleading re-reporting after Plaintiff sent Defendants written disputes identifying the inaccurate, incomplete, and/or materially misleading information related to the Northpark Account and Regions Account, Defendants, upon receipt of Plaintiff's disputes, failed to conduct a reasonable investigations and/or reinvestigations with respect to the disputed information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b).

261.    Defendants failed to review all relevant information provided by Plaintiff in the disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b).

262.    Due to Defendants' failure to reasonably investigate and/or reinvestigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b), thereby causing continued reporting of inaccurate, incomplete, and/or materially misleading information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b).

263.    By reporting inaccurate, incomplete, and/or materially misleading account information after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b).

264.    Defendants' inaccurate, incomplete, and/or materially misleading reporting on the Northpark Account and Regions Account—in light of their knowledge of the positive data they could report on the respective accounts—was willful. Plaintiff is, accordingly, eligible for statutory damages.

265.   Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

266.   Based upon Defendants' knowledge of each respective account and the data the Defendants possessed on each account, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under the FCRA.

267.   Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer actual damages, including, without limitation: fear of credit denials, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, humiliation, frustration, and emotional distress.

268.   Plaintiff entered bankruptcy to clean up Plaintiff's credit and to pay and resolve debts.

269.   In the Fall of 2022, Plaintiff was denied a credit card by Capital One while Defendants' inaccurate credit reporting on the Northpark Account and Regions Account was present on Plaintiff's reports.

270.   Upon Plaintiff's information and belief, the Capital One denial was at least in part impacted by the inaccurate reporting of the Northpark Account and Regions Account.

271.   In the past year, Plaintiff obtained credit from Mission Lane and Ollo while Defendants' inaccurate credit reporting on the Northpark Account and Regions Account was present on Plaintiff's reports.

272.   Upon Plaintiff's information and belief, the terms of the credit on the Mission Lane and Ollo accounts, including the credit limit and interest rate, were less favorable as a result of Defendants' inaccurate credit reporting of the Northpark Account and Regions Account.

273.    In the Fall of 2022, Plaintiff's automobile broke down and needed repairs, but Plaintiff was unable to obtain credit to help cover the repair bill and Plaintiff was forced to borrow money from his mother.

274.    Upon Plaintiff's information and belief, Plaintiff's inability to obtain credit for his automobile repairs was a result of Defendants' inaccurate credit reporting of the Northpark Account and Regions Account.

275.    For the last several years when interest rates were low, Plaintiff has desired to perform repairs on Plaintiff's home, but has not been able to secure credit.

276.    Upon Plaintiff's information and belief, Plaintiff's inability to obtain credit for his home repairs was a result of Defendants' inaccurate credit reporting of the Northpark Account and Regions Account.

277.    Plaintiff suffers from the effects of a cardiovascular condition and believes stress caused by Defendants' ongoing inaccurate credit reporting despite Plaintiff's multiple disputes on the Northpark Account and Regions Account have aggravated the effects of Plaintiff's condition.

278.    Plaintiff has suffered ongoing annoyance and frustration that, despite playing by the rules, making payments on the Northpark Account and Regions Account, and making multiple disputes, Defendants are not playing by the rules.

279.    As a result of Defendants' ongoing inaccurate credit reporting despite receiving multiple disputes, Plaintiff feels as though a weight has been placed on him that he cannot lift and he suffers from severe frustration knowing that while he is upholding his promises and obligations and making his payments as required, Defendants are ignoring him.

280.    Plaintiff has and continues to experience worry that keeps him up at night as a result of Defendants' failures to correct the reporting on the Northpark Account and Regions Account.

281.    Plaintiff has incurred out of pocket expenses in his efforts to get Defendants to report that he has and is making his payments as agreed on the Northpark and Regions Accounts.

282.    Plaintiff feels humiliated knowing that third parties have accessed his credit reports while the Accounts are not reflecting his past and ongoing payments.

283.    When Plaintiff first learned of Defendants' inaccurate, incomplete, and/or materially misleading credit reporting, Plaintiff was stressed.

284.    As a result, by reporting inaccurate, incomplete, and/or materially misleading account information, Defendants' acts and omissions have caused in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

285.    Plaintiff's credit reports were published to third parties while the inaccurate information on the Northpark Account and Regions Account was reporting.

286.    Defendants thus caused a defamation-type harm upon Plaintiff.

287.    Creating the false impression that the Northpark Account and Regions Account were negative instead of positive creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit reports that is engaged in judgment-based lending.

## FIRST CAUSE OF ACTION
### FCRA - 15 U.S.C. § 1681 *et seq.*

288.    Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

289.    The foregoing acts and omissions constitute numerous and multiple violations of the FCRA, including, but not limited to 15 U.S.C. § 1681e(b) as to Experian, Equifax, and TU.

290.    Defendants Experian, Equifax, and TU's acts and omissions were in violation of 15 U.S.C. § 1681i as well.

291.    Defendant Northpark and Regions's acts and omissions were in violation of 15 U.S.C. § 1681s-2(b).

292.    The above-described violations by Defendants were willful, allowing Plaintiff to recover under 15 U.S.C. § 1681n.

293.    As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

294.    In the alternative, Defendants were negligent in their actions, which entitled Plaintiff to recover und 15 U.S.C. § 1681o.

295.    As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

## REQUEST FOR A JURY TRIAL

296.    Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1.    A declaratory judgment that Defendants' actions as discussed herein are unlawful;

2.    Plaintiff's actual damages from each Defendant;

3.    Statutory damages of not less than $100.00 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), from each Defendant;

4.      Punitive damages from each Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5.      An award of costs of litigation and reasonable attorneys' fees from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and

6.      Any other relief the Court may deem just and proper.

Dated: <u>March 13, 2023</u>

Respectfully Submitted,


By: <u> /s/Richard J. Shea</u>

Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC.
*Attorneys for Plaintiff*
6100 N. Keystone Avenue, Suite 620
Indianapolis, IN 46220
Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Gregory Hough

**DEFENDANTS**
Experian Information Solutions, Inc., Equifax Information Services LLC, TransUnion LLC, Northpark Community ☐

**(b)** County of Residence of First Listed Plaintiff   Marion
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sawun & Shea LLC, 6100 N. Keystone Ave., Ste. 620, Indianapolis, IN 46220 (317) 255-2600

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                  *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☒ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1681, et. seq.
Brief description of cause:
Violations of FCRA

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
March 13, 2023

SIGNATURE OF ATTORNEY OF RECORD
/s/ Richard J. Shea

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Indiana

|  |  |  |
|---|---|---|
| Gregory Hough | ) ) ) ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. 1-23-CV-00446 |
| Experian Information Solutions, Inc., Equifax Information Services LLC, TransUnion LLC, Northpark Community Credit Union, and Regions Bank, | ) ) ) ) ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Experian Information Solutions, Inc.
c/o CT Corporation System
334 North Senate Avenue
Indianapolis, IN 46204

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Richard J. Shea
Sawin & Shea, LLC.
6100 N. Keystone Ave, Suite 620
Indianapolis, IN 46220

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Indiana

|  |  |  |
|---|---|---|
| Gregory Hough | ) ) ) ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) ) | Civil Action No.  1-23-CV-00446 |
| Experian Information Solutions, Inc., Equifax Information Services LLC, TransUnion LLC, Northpark Community Credit Union, and Regions Bank | ) ) ) ) ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

> Equifax Information Services, LLC
> c/o Corporation Service Company
> 135 North Pennsylvania Street, Suite 1610
> Indianapolis, IN 46204

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Richard J. Shea
> Sawin & Shea, LLC.
> 6100 N. Keystone Ave, Suite 620
> Indianapolis, IN 46220

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

                                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                        *Server's signature*

                                                        _____
                                                        *Printed name and title*

                                                        _____
                                                        *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Indiana

| | )
Gregory Hough | )
| )
_____ | )
*Plaintiff(s)* | )
v. | )    Civil Action No.   1-23-CV-00446
Experian Information Solutions, Inc., Equifax | )
Information Services LLC, TransUnion LLC, | )
Northpark Community Credit Union, and Regions | )
Bank, | )
_____ | )
*Defendant(s)* | )

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

TransUnion LLC
c/o The Prentice-Hall Corporation System, Inc.
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN 46204

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Richard J. Shea
Sawin & Shea, LLC.
6100 N. Keystone Ave, Suite 620
Indianapolis, IN 46220

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                         *Server's signature*

                                                   _____
                                                         *Printed name and title*


                                                   _____
                                                         *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Indiana

| | ) |
|---|---|
| Gregory Hough | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| Experian Information Solutions, Inc., Equifax Information Services LLC, TransUnion LLC, Northpark Community Credit Union, and Regions Bank, | ) |
| _Defendant(s)_ | ) |

Civil Action No.  1-23-CV-00446

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

Northpark Community Credit Union
c/o Carma L. Parrish
5965 West Technology Center Drive
Indianapolis, IN 46278

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Richard J. Shea
Sawin & Shea, LLC.
6100 N. Keystone Ave, Suite 620
Indianapolis, IN 46220

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____

_____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE
#### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Indiana

|  |  |
|---|---|
| Gregory Hough <br> _____ <br> *Plaintiff(s)* <br> v. <br> Experian Information Solutions, Inc., Equifax Information Services LLC, TransUnion LLC, Northpark Community Credit Union, and Regions Bank, <br> _____ <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) <br> Civil Action No.  1-23-CV-00446 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Regions Bank
c/o Corporation Service Company
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN 46204

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Richard J. Shea
Sawin & Shea, LLC.
6100 N. Keystone Ave, Suite 620
Indianapolis, IN 46220

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: